**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

AMANDA L. BALL,

          Plaintiff-Appellant,

v.

WILSHIRE INSURANCE
COMPANY, a North Carolina
company,

          Defendant-Appellee.

No. 06-7095
(D.C. No. 05-CV-491-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

_____

Amanda L. Ball appeals the district court's grant of summary judgment to

defendant Wilshire Insurance Company and its denial of her partial motion for

summary judgment in this insurance-coverage dispute. We certified certain

questions of law to the Supreme Court of Oklahoma. That court has answered our

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

questions and the parties have filed supplemental briefs addressing the Supreme Court of Oklahoma's opinion. In light of the answers to the certified questions, we AFFIRM the district court's decision.

I.

On June 2, 2003, Ms. Ball, with her roommate as a passenger, was driving a pickup truck loaned to her by her employer, John Drummond d/b/a Henryetta Autosales (Henryetta), while Henryetta repaired her car. A serious accident with another vehicle caused numerous injuries to Ms. Ball, her roommate, and the occupants of the other car. Wilshire was Henryetta's insurer. Relying on the policy's exclusion of coverage for vehicles that Henryetta loaned while it was repairing a customer's vehicle (the loaned-vehicle exclusion), Wilshire refused Ms. Ball's requests to defend her against state-court negligence suits brought by the other car's passengers. Wilshire also denied Ms. Ball's claim for her own injuries under the uninsured/underinsured motorist (UM) provisions of the policy. The state court entered a consolidated default judgment against Ms. Ball for more than 20 million dollars.

Ms. Ball then sued Wilshire in federal district court, alleging that Wilshire's refusals to defend her in the state suits and to pay UM benefits breached the terms of Henryetta's policy and constituted bad faith. While the federal suit was pending, Wilshire paid Ms. Ball and her roommate the limits of the policy's UM coverage, so Ms. Ball amended her theory of bad-faith liability

away from Wilshire's *denial* of UM benefits to focus on its *delay* in paying the benefits.

The district court granted summary judgment to Wilshire. The court noted the loaned-vehicle exclusion, but predicted that the Supreme Court of Oklahoma would invalidate the exclusion to the extent it conflicted with the minimum coverage required by Oklahoma's Compulsory Liability Insurance statute, Okla. Stat. tit. 47, §§ 7-600 to 7-612 (the Compulsory Insurance Law). But examining the interaction between an insurer's duty to defend and the Compulsory Insurance Law, the court held that Wilshire had no duty to defend Ms. Ball and did not act in bad faith in declining to do   The court further found no bad faith in the delay in paying UM benefits because the law was not settled whether the Compulsory Insurance Law invalidated the loaned-vehicle exclusion.

Ms. Ball appealed, arguing that she is an "insured" under the policy; that because she is an "insured," Wilshire had a duty to defend her; and that Wilshire acted in bad faith in refusing to defend her and in failing to tender the UM benefits in a timely manner. We certified certain questions of law to the Supreme Court of Oklahoma. That court having answered the questions, *see Ball v. Wilshire Ins. Co.*, No. 104939, __ P.3d __, 2009 WL 1679954 (Okla. 2009), we proceed to resolve this appeal.

We review a grant of summary judgment de novo. *See Grynberg v. Total, S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1585 (2009). Because this is a diversity case arising out of Oklahoma, we follow the decisions of the Supreme Court of Oklahoma. *See id.* at 1354. *Ball* clearly indicates that the district court's decision should be affirmed in all respects.

As the district court predicted, the Supreme Court of Oklahoma held that the Compulsory Insurance Law voids the loaned-vehicle exclusion to the extent of the statutory minimum required amount of coverage. *See id.* at *3. But the Oklahoma court disagreed with Ms. Ball's conclusion that the statutory invalidation of the loaned-vehicle exclusion necessarily means that "the exclusion never existed and the wrongly excluded person becomes entitled to the performance of the insurer's other contractual obligations to its insured, including a defense." *Id.* at *4. Rather, the court held:

> The statutory omnibus clause displaces only those insurance policy provisions that are incompatible with the law's intent to provide minimal compensation to an injured third party. The person whose minimal coverage is law-mandated is not entitled to the insurer's performance of purely contractual obligations that stand outside the law's mandate.

*Id.* Thus, because of the loaned-vehicle exclusion, Wilshire had no duty to defend, even though it had a duty to indemnify in the amount of the minimum statutorily required coverage. *See id.* at *4-*5.

Because Wilshire did not have a duty to defend, its refusal to defend Ms. Ball in the state lawsuits cannot be considered unreasonable or in bad faith. Ms. Ball argues in her supplemental brief that good faith required Wilshire to "resolve the dispute without occasioning harm upon the insured by, for example, seeking judicial declaration of coverage or defending under reservation of rights," rather than simply refusing to defend. Aplt. Supp. Br. at 4. We disagree. Oklahoma provides three options to an insurer who disputes a demand to defend: "(1) seek declaratory relief that would define the insurer's rights and obligations; (2) defend the insured under a reservation of rights, or (3) refuse to take any action at the peril of being later found in breach of its duty to defend." *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 304-05 (Okla. 1996). Wilshire chose the third option, and its gamble paid off when the Supreme Court of Oklahoma held that in these circumstances there is no duty to defend.

Finally, *Ball* held that the issue of whether Wilshire was required to tender payment for UM coverage was unsettled under Oklahoma law, meaning that Wilshire could not be liable under a bad-faith theory. *See* 2009 WL 1679954, at *10 ("Inasmuch as the insurer has made payment to the claimant and the law had not been settled by requiring payment under this fact pattern, a bad-faith claim will not lie against the insurer.").

III.

The judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge